UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHARLES GUENTHER, an individual, ) | Case No.: 5:11-CV-00380-EJD |
| ) | |
| Plaintiff, ) | **ORDER GRANTING DEFENDANTS'** |
| ) | **MOTION FOR SUMMARY** |
| v. ) | **JUDGMENT** |
| ) | |
| LOCKHEED MARTIN CORPORATION, et. ) | |
| al., ) | |
| ) | **[Re: Docket No. 64]** |
| ) | |
| Defendants. ) | |

Presently before the Court in this dispute over pension plan benefits arising under the Employee Retirement Income Security Act of 1974 ("ERISA," 29 U.S.C. §§ 1000 – 1461) is Defendants Lockheed Martin Corporation ("Lockheed") and Lockheed Martin Corporation Salaried Employee Retirement Program's ("the Plan") (collectively, "Defendants") Motion for Summary Judgment.  The Court found this matter appropriate for decision without oral argument pursuant to Local Civil Rule 7–1(b), and previously vacated the corresponding hearing date. Having fully reviewed the parties' papers the Court GRANTS Defendants' motion.

1

# I. BACKGROUND

### a. Mr. Guenther's Employment with Lockheed

Charles Guenther ("Plaintiff") has been employed off and on with Lockheed for much of the past thirty years. Declaration of Charles Guenther ("Guenther Decl.") ¶ 2. Lockheed initially hired him in 1983; he subsequently separated from the company in 1991. Id. During these terms of employment, Mr. Guenther was enrolled in the Plan. Id. In 1997, Mr. Guenther rejoined Lockheed; he was informed that he would be allowed to rejoin the Plan and that his Plan benefits would be "bridged" to his previous period of service. Id. In 2001, Mr. Guenther again separated from Lockheed. Id. On September 11, 2006, Lockheed rehired Mr. Guenther for a second time. Id. ¶ 3. According to Mr. Guenther, Lockheed recruiters said that he would again be able to "bridge" his Plan benefits with his previous period of service. Id. ¶¶ 3, 4, Ex. A. Mr. Guenther cites the opportunity to bridge his Plan benefits between his two periods of service as a key condition for his return. Id. ¶ 3.

### b. The Plan and Its Terms

Lockheed funds the Plan through a trust. Declaration of Clarissa Kang ("Kang Decl.") Ex. A, Article X(4). According to the Plan, Lockheed is the Plan administrator ("the Administrator") and the Administrator is a named fiduciary of the Plan responsible for making and reviewing claim determinations. Id. The Plan designates Lockheed's Vice-President for Human Resources as the individual responsible for acting on Lockheed's behalf in administering the Plan. Id. The Plan purports to vest the authority for determining Plan benefits in the Administrator thus:

> The Plan Administrator shall be responsible for, and have the necessary authority and discretion to carry out the following:
>
> (i)   Determination of benefit eligibility and amount of benefits payable to Participants and Beneficiaries, as applicable, and certification thereof to the Trustee for payment from the trust fund;
>
> (ii)  Establishment of procedures to be followed by Participants and Beneficiaries, as applicable, for filing applications for benefits;

2

(iii) Appoint the committee(s) or other persons(s) responsible for making and reviewing claim determinations as provided in Article X(9);

(iv) Interpretation and construction of Plan provisions;

[sic]

(x) All functions assigned to the Plan Administrator under the terms of the Plan or Trust Agreement

The Plan Administrator and its delegates shall have full discretion to construe and interpret the terms and provisions of the Plan, which interpretation or constructions shall be final, conclusive and binding on all parties, including but not limited to the Corporation and [a] Participant or Beneficiary, except as otherwise provided by law.

Id. Ex. A, Article X(4).

The Administrator has delegated the authority to decide appeals of any claims it denies to an administrative committee ("the Committee"). Id. Ex. A, Article X(9)(g). The Plan text grants sanction to such delegation. Id.

On December 21, 2005 (effective January 1, 2006)—several months before Mr. Guenther's second rehire—the Plan was amended to exclude new entrants from participating in the Plan (hereinafter "the 2005 amendment"). Id. Ex. D.

### c. The Instant Action

On July 17, 2006, Mr. Guenther filed an application to bridge his Plan benefits with his previous periods of service. Guenther Decl. ¶ 3. Mr. Guenther states that he was prompted to do so by virtue of representations from Lockheed recruiters indicating that he would be allowed to bridge his Plan benefits with his previous periods of service, including a letter sent to him by Lockheed. Id. ¶ 3, Ex. A. In November of 2006, the Administrator sent Mr. Guenther a letter informing him that he was not eligible to bridge his benefits in this manner. Id. ¶ 4, Ex. B. Mr. Guenther made various, largely unsuccessful efforts to inquire about the apparent discrepancy. Id. ¶¶ 5 – 10. Mr. Guenther filed an action in Santa Clara County Superior Court seeking clarification of rights under ERISA and alleging breach of contract on November 8, 2010. See Notice of Removal, Docket Item No. 1. Lockheed removed the action to this Court. Id. Defendants filed a

3
Case No.: 5:11-CV-00380-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   motion to dismiss Mr. Guenther's complaint, asserting that the Plan was governed by ERISA and,
2   as such, required Mr. Guenther to exhaust his administrative remedies before pursuing action in
3   court. Def.'s Mot. to Dismiss First Am. Compl., Docket Item No. 14. Because Mr. Guenther had
4   never completed the appeals process on his claim with the Committee, this Court accordingly
5   stayed proceedings on the ERISA claim; it granted, with prejudice, Lockheed's motion to dismiss
6   as to the breach of contract claim as pre-empted by ERISA. Order on Mot. to Dismiss, Docket
7   Item No. 37.
8       Mr. Guenther then filed an appeal of the Administrator's decision with the Committee.
9   Kang Decl., Ex. E. The Committee conducted a review of the Administrator's decision, including
10  taking the sworn statements of various individuals who, Mr. Guenther alleged, had promised Mr.
11  Guenther that he would be able to bridge his Plan benefits with his previous periods of service. Id.
12  The Committee determined that Mr. Guenther's claims were not credible. Id. ¶ 4. As a result, the
13  Committee affirmed the decision of the Administrator. Id.
14      Having exhausted his administrative remedies, Mr. Guenther thereafter proceeded with the
15  appeal of the Committee's decision. On October 1, 2013, the Court granted Defendants' motion
16  for summary adjudication as to the following issues: 1) that the "abuse of discretion" standard of
17  review applies to Plaintiff's claims, 2) that evidence outside the administrative record is
18  inadmissible, and 3) that evidence regarding any conflict of interest inherent in the plan is limited
19  to the administrative record. Order Granting Summary Adjudication, Docket Item No. 84.
20      The Court now decides Defendants' motion for summary judgment on Plaintiff's sole
21  remaining ERISA claim.

**I.  LEGAL STANDARD**

    **a.  Standard of Review in ERISA Cases**

Under ERISA § 502, a beneficiary or plan participant may sue in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); see also CIGNA Corp. v. Amara, 131 S. Ct. 1866, 1871 (2011); Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004). A claim of denial of benefits in an ERISA case "is to be reviewed under a de

4
Case No.: 5:11-CV-00380-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 629 (9th Cir. 2009). If the plan confers such discretion, then the denial is reviewed for an abuse of discretion. Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 110–11 (2008). As discussed above, the Court earlier decided that the appropriate standard of review in this case is abuse of discretion.

Under an abuse of discretion review, the dispositive issue is whether the denial of benefits was reasonable. Firestone, 489 U.S. at 111; Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 675 (9th Cir. 2011). A plan administrator's decision was unreasonable if it "was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts of the record." Salomaa, 642 F.3d at 676. If the Court is "left with a definite and firm conviction that [such] a mistake has been committed," it must find that the plan administrator abused its discretion. Id. at 676 (quoting United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)).

A plan administrator's conflict of interest is weighed as a factor when reviewing its decisions for abuse of discretion. Glenn, 554 U.S. at 111–12. Where there is a structural conflict of interest because the claim fiduciary is also the funding source for the Plan, that conflict does not lead to a less deferential standard of review; rather, like most procedural violations, the conflict is merely one additional factor to be considered in determining whether a fiduciary abused its discretion. Id.

**b. Summary Judgment Standard of Review**

Summary judgment should be granted if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986). Material facts are those which may affect the outcome of the case, and a dispute as to a material fact is "genuine" only if there is sufficient evidence for a reasonable trier of fact to decide in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On a motion for summary judgment, the Court draws all reasonable inferences that may be taken from the underlying facts in the light most favorable to the nonmoving party.

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[T]he district court does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." House v. Bell, 547 U.S. 518, 559–560 (2006).

In ERISA actions, however, where the plaintiff is challenging the plan administrator's denial of benefits and the district court has already determined that the review is for abuse of discretion, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999), overruled in part on other grounds by Abatie, 458 F.3d at 966–69; see also Nolan v. Heald College, 551 F.3d 1148, 1154–55 (9th Cir. 2009). Thus, a summary judgment motion resting on the administrative record is not a typical summary judgment, but rather, is a procedural vehicle for determining whether benefits were properly granted or denied. On the other hand, the traditional rules of summary judgment do apply to evidence outside of the administrative record, including the requirement that the evidence must be viewed in the light most favorable to the nonmoving party. Nolan, 551 F.3d at 1150. Thus, in evaluating an equitable estoppel claim the Court will apply standard Rule 56 analysis.

## II. DISCUSSION

Plaintiff's opposition brief was filed prior to the Court's October 1, 2013 Order Granting Summary Adjudication and opposes summary judgment on the basis that Defendants' motion is premature because questions regarding the scope of discovery and the standard of review remain undecided. See Pl.'s Opp. Brief, Docket Item No. 67. Plaintiff's opposition brief also submits arguments regarding the scope of discovery and the standard of review. See id. Having already decided those issues as discussed above, the Court now turns to the merits of the case.

This case revolves around Defendants' refusal to allow Plaintiff to rejoin the Plan upon his rehire, which would let Plaintiff "bridge" his service by allowing Plaintiff to continue to accrue credited service in the Plan upon his rehire and going forward. Defendants claim that they never represented to Plaintiff that upon his rehire he would be able to rejoin the Plan; rather, employees rehired after January 1, 2006 would be eligible to participate in a different plan, the Capital

Accumulation Plan ("CAP"), a defined contribution retirement plan. The "bridging" promised to Plaintiff, according to Defendants, was 1) immediate vesting in the CAP, 2) further credit toward early retirement for his post-rehire service, and 3) use of his compensation following his rehire to be included in calculations to determine his Final Average Pensionable Earnings under the Plan, which may increase the Plaintiff's vested Plan benefit. Plaintiff's prior benefits in the Plan would remain his but he would no longer be able to accrue additional benefits under the Plan.

Thus, the decision to be reviewed for an abuse of discretion is the decision of Plan administrators to deny Plaintiff's application for bridging in the Plan.

### a. Standard of review in light of the structural conflict of interest

Lockheed both funds and administers the Plan, meaning that a structural conflict of interest exists. Indeed, this Court has in the past found a structural conflict of interest in the Plan. Nalbandian v. Lockheed Martin Corp., 2011 WL 3881473, at *5 (N.D. Cal. Sept. 1, 2011).

Abuse of discretion review is required whenever an ERISA plan grants discretion to the plan administrator, but that review is to be informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record. Thus, the Court shall conduct its review with mind to the structural conflict of interest inherent in the Plan.

### b. Defendants' decision regarding bridging was not unreasonable

Under an abuse of discretion review, the dispositive issue is whether the denial of benefits was reasonable. Winters v. Costco Wholesale Corp., 49 F.3d 550, 553 (9th Cir. 1995). An ERISA administrator abuses its discretion only if it renders a decision without explanation, construes provisions of the plan in a way that conflicts with the plain language of the plan, or relies on clearly erroneous findings of fact. Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan, 410 F.3d 1173, 1178 (9th Cir. 2005). A court must "uphold the decision of an ERISA plan administrator if it is based upon a reasonable interpretation of the plan's terms and was made in good faith." Id. (citing Estate of Shockley v. Alyeska Pipeline Serv. Co., 130 F.3d 403, 405 (9th Cir. 1997)).

Defendants' decision to deny Plaintiff's request to rejoin the Plan is based on the terms of the Plan as amended in 2005. It appears that prior to the 2005 amendment, Plaintiff would have been eligible to rejoin the Plan (in fact, in 1997 Plaintiff was allowed to rejoin the Plan after his

7
Case No.: 5:11-CV-00380-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   first rehire).  Therefore, the Court directs its attention towards the 2005 amendment to determine its

2   effect on the Plan's terms and Plaintiff's rights.

3         Plaintiff contends that none of the changes were intended to apply to him.  He argues that

4   the 2005 amendment was intended only to prevent rehired individuals, who were not already Plan

5   participants, from becoming participants.  The 2005 amendment states that "[Lockheed] wishes to

6   amend certain of [sic] the pension plans that make up the Lockheed Martin Corporation Salaried

7   Retirement Program . . . so as to close the plans to new entrants, including both new hires and

8   rehires, effective January 1, 2006."  Kang Decl., Ex. D.  Plaintiff contends that he is not a "new

9   entrant" because he is already a vested participant in the Plan based on his prior service and that

10  therefore the amendment was not intended to affect his rights.

11        In addition, the 2005 amendment changed the definition of "employee" in Art. I(9) to state

12  that "no person who is hired by an Employing Company on or after January 1, 2006 shall be

13  considered an Employee eligible to participate in the Plan."  Id.  Next, an amendment was made to

14  Art. II(3) regarding "Entry Into the Plan."  The new language in Art. II(3)(b) states that "no person

15  who is re-employed by an Employing Company on or after January 1, 2006 shall become an active

16  Participant or earn Credited Service under the Plan with respect to any period commencing with

17  such reemployment."  That same language was also inserted into Art. III(4), which addresses

18  "Credited Service."  Art. II(3)(a) also states that each employee who was a participant in the Plan

19  as of January 1, 2008 "is automatically included in the Plan as of January 1, 2008."  The parties

20  offer competing interpretations of this language.

21        However, under the abuse of discretion standard Defendants need only to base their

22  decision on a reasonable interpretation of the Plan's terms.  The Court finds that this standard is

23  met, even considering that the standard becomes more difficult to meet in light of the structural

24  conflict of interest.

25        The language inserted in Art. II(3)(b) and Art. III(4) by the 2005 amendment is

26  unambiguous and dictates this result.  Plaintiff was undisputably re-employed by Defendants after

27  January 1, 2006, which would disqualify him from becoming an "active Participant or [earning]

28  Credited Service under the Plan with respect to any period commencing with such reemployment."

8
Case No.: 5:11-CV-00380-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The clear meaning of this language is that Plaintiff is barred from rejoining the Plan or continuing to earn Credited Service under the Plan.  Plaintiff attempts to argue around this result by contending that the language applies only to re-hired employees who were not already participants, but this interpretation is unsupported and is directly at odds with the plain language of Plan terms.

### c. Equitable estoppel

The Court previously held that Plaintiff had not stated a claim for equitable estoppel.  See Order Granting Summary Adjudication.  Plaintiff's First Amended Complaint ("FAC") had pleaded a cause of action under ERISA § 502(a) (29 U.S.C. § 1132(a)) without specifying a particular subsection.  The Court treated the cause of action as one under ERISA § 502(a)(1)(B) because Plaintiff had couched his cause of action as a "suit to recover benefits due under ERISA, to enforce and clarify rights under ERISA, and to enforce the terms of ERISA."  FAC at 5.  Although this language appears to draw from both § 502(a)(1)(B) and § 502(a)(3), it more closely matches the language of § 502(a)(1)(B), leading the Court to construe Plaintiff's ERISA cause of action as one under that subsection.  Moreover, Plaintiff's FAC made no mention of "equitable estoppel."

Plaintiff argues that the "Prayer for Relief" section of his FAC "indicates that equitable relief was sought" because it "seeks an order compelling Defendants to make future payments, and for an order clarifying and enforcing Plaintiff's rights."  Pl.'s Opp. Brief at 17.  Even assuming that § 502(a)(1)(B) does afford such relief, however, Plaintiff waited until well after the deadline for amendments to the pleadings before bringing this argument.  Although Plaintiff did ask for leave to amend his FAC to add a claim for equitable estoppel, he was denied because he had made the request nearly five months after the court-imposed deadline for amendments to the pleadings.  See Order Denying Leave to File Second Am. Compl., Docket Item No. 83.  Thus, the Court has not allowed Plaintiff to submit or discover evidence related to equitable estoppel that was beyond the administrative record.

However, even if the Court had entertained an equitable estoppel cause of action and allowed Plaintiff to submit and discover related evidence, it would fail.  A claim for equitable estoppel for violation of ERISA has five elements: (1) a material misrepresentation, (2) reasonable and detrimental reliance upon the representation, (3) extraordinary circumstances, (4) that the

9
Case No.: 5:11-CV-00380-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect, and (5) that representations were made involving an oral interpretation of the plan. Spink v. Lockheed Corp., 125 F.3d 1257, 1262 (9th Cir. 1997).

As discussed above, the terms of the Plan (post-2005 amendment) are not ambiguous and on that ground alone, bar Plaintiff from prevailing on an equitable estoppel claim. Nalbandian, 2011 WL 3881473, at *9. Furthermore, it is far from certain that a "misrepresentation" was made or that "representations were made involving an oral interpretation of the plan." To meet the misrepresentation element, Plaintiff points to a letter from July 25, 2006 confirming that Plaintiff will be allowed to bridge his service. Guenther Decl., Ex. A. Plaintiff believed that "bridging" meant that he would be allowed to rejoin the Plan, however, it appears that from Defendants' perspective, "bridging" meant that Plaintiff would receive preferential treatment under the Capital Accumulation Plan. Plaintiff also claimed that Lockheed employees orally represented that bridging was available, but importantly, Plaintiff never claims that these employees promised that "bridging" *under the Plan*, rather than under the Capital Accumulation Plan, was available. In other words, "bridging" was promised, and "bridging" was provided, but the parties differed as to their understanding of what "bridging" actually meant. It appears more that something was lost in translation than that a misrepresentation was made.

Plaintiff's discovery requests, which the Court denied, were seeking documents pertaining to Lockheed's reasons for promulgating the 2005 amendment, Lockheed's internal understanding of the term "bridging," and communications made to other applicants during the time period when Plaintiff was rehired. However, these documents would not help Plaintiff overcome his burden of establishing that Plan provisions were ambiguous.

As a final matter, the Court notes that cases involving equitable relief under § 502(a)(3) might be more appropriately analyzed under the Supreme Court's recent holding in CIGNA Corp. v. Amara, 131 S. Ct. 1866 (2011), rather than under the five-factor test set forth in Spink. See Colaco v. ASIC Advantage Simplified Employee Pension Plan, 2013 WL 5402032, at *5 (N.D. Cal. Sept. 26, 2013) (distinguishing between "freestanding equitable estoppel claims" under Spink and § 502(a)(3) equitable remedies under Amara.) Under the Amara holding, the rigid requirement

10
Case No.: 5:11-CV-00380-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

from Spink that plan terms must be ambiguous may not be required for a plaintiff to prevail on an equitable estoppel theory. See Colaco, 2013 WL 5402032, at *5. However, Plaintiff's brief discusses only Spink, and in any event, it seems very unlikely to the Court that Plaintiff could prove that a misrepresentation was made or that Defendants otherwise acted in a way that would give rise to an equitable remedy, given the circumstances discussed above.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED. Judgment will be entered in favor of Defendants and the Clerk of Court shall close the file.

**IT IS SO ORDERED**

Dated: January 3, 2014

_____
EDWARD J. DAVILA
United States District Judge